UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENU, INC., <br>     Plaintiff, <br> v. <br> BELKIN INTERNATIONAL, INC., <br>     Defendant. | Case No. 15-cv-01429-JD <br><br> **ORDER RE SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 73, 80 |

This patent infringement case involves claims for adjustable mounts that allow consumers to attach cell phones to the dashboard air vents in cars. Plaintiff Kenu, Inc., makes a product called the "AIRFRAME" and owns the two patents that are at issue in this case: United States Patent No. 9,080,714 (the '714 patent) for an "Adjustable Portable Device Holder," and United States Design Patent No. D690,707 (the 'D707 patent) for a "Dashboard Vent Mount for an Electronic Device."

Defendant Belkin International, Inc., makes a competing mount called the "Vent Mount." Kenu's three remaining claims against Belkin are for (1) infringement of the '714 patent, (2) infringement of the 'D707 patent, and (3) unfair competition under California's Unfair Competition Law, California Business and Professions Code § 17200. *See* Dkt. No. 141; Dkt. No. 68 (Case No. 14-4327).

This order resolves Kenu's and Belkin's cross-motions for summary judgment. Dkt. Nos. 73, 80. Only Kenu's infringement claim for the 'D707 patent will proceed to trial.

**DISCUSSION**

**I. THE '714 PATENT**

Kenu's infringement claim for the '714 patent is under the doctrine of equivalents. *See* Dkt. No. 80 at 5-6; Dkt. No. 81, Ex. 1, Ex. C at 3-4; Dkt. No. 96-25 at 7 (noting that the '714

patent claims "an adjustable clamping element comprising, *inter alia*, 'springs inserted one each over each rod and held in place by a screw affixed to an end of the respective rod,'" whereas "Belkin's Vent Mount incorporates an equivalent rack and pinion mechanism with torsion spring," and so if "the doctrine of equivalent applies, [then] Belkin's Vent Mount infringes the asserted claims of the '714 patent"). Kenu does not claim that Belkin literally infringed the '714 patent.

Belkin's main point on summary judgment is that Kenu is estopped by steps it took to narrow its claim while prosecuting the '714 patent. Prosecution history estoppel is a recognized limitation on the doctrine of equivalents whereby certain narrowing amendments made during patent prosecution later act as a bar to the application of the doctrine of equivalents to the elements that were added by the amendment. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30-34 (1997). The Federal Circuit has made it clear that this is a question of law for the Court to answer, *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367-68 (Fed. Cir. 2003), and the prosecution history record submitted by the parties shows, under the analytical steps set out in *Festo*, that estoppel applies here.

The reasons for this conclusion are straightforward. As an initial matter, the undisputed facts show that an amendment was filed with the Patent and Trademark Office ("PTO") that narrowed the literal scope of a claim in the patent application. *Festo*, 344 F.3d at 1366. Specifically, after receiving a non-final rejection, Dkt. No. 81, Ex. 3, Kenu requested reconsideration "and allowance of the claims in view of the following," which included these claim amendments:

> 9. (Currently amended) The adjustable portable device holder as recited in claim <u>1, wherein the adjustable clamping element comprises two stainless steel rods, an expandable arm and a main body</u>8, wherein gripping material is at least one material selected from the group consisting of: rubber, polymeric material, plastic, metal, alloy and composite material.
>
> 10. (Currently amended) The adjustable portable device holder as recited in claim <u>9, further comprising stainless steel springs inserted one each over each rod and held in place by a stainless steel screw affixed to an end of the respective rod</u>8, wherein the gripping surface is textured.

Dkt. No. 81, Ex. 4 at KENU000516, KENU000526. After a final rejection, Dkt. No. 81, Ex. 5,

Kenu submitted a "request for after final consideration" with the same language for claims 9 and 10. Dkt. No. 81, Ex. 6 at KENU000738, KENU000676.

Later, in an examiner-initiated telephonic interview, Kenu and the examiner "agreed to incorporate dependent claims 9-10 into claim 1 (and remove the recitation of 'stainless steel') to make claims 1-8 and 11-16 allowable." Dkt. No. 81, Ex. 9. So after amendments were filed with the PTO, the scope of claim 1 specified that the adjustable clamping element for the mount had to be comprised of "two rods, an expandable arm, a main body, and springs inserted one each over each rod and held in place by a screw affixed to an end of the respective rod." Dkt. No. 81, Ex. 10 ("Notice of Allowance") at KENU000751.

All of this amply demonstrates that claim 1 was narrowed by amendment. The second question is "whether the reason for that amendment was a substantial one relating to patentability." *Festo*, 344 F.3d at 1366-67. "When the prosecution history record reveals no reason for the narrowing amendment, *Warner-Jenkinson* presumes that the patentee had a substantial reason relating to patentability . . . ." *Id.* "If the patentee successfully establishes that the amendment was not for a reason of patentability, then prosecution history estoppel does not apply." *Id.*

Every indication from the patent prosecution history record here is that the amendment was made for a substantial reason relating to patentability. Kenu proposed the amendments on two separate occasions expressly for "allowance of the claims in view of" them. Dkt. No. 81, Ex. 4 at KENU000516; *id.*, Ex. 6 at KENU000738. Kenu tries to sidestep this fact by noting that the examiner checked the box titled "Others," for "Issues Discussed" in his Examiner-Initiated Interview Summary, but that is of no moment. The same summary states that "[a]pplicant and examiner agreed to incorporate dependent claims 9-10 into claim 1 . . . *to make claims 1-8 . . . allowable*." Dkt. No. 81, Ex. 9 at KENU000753 (emphasis added). Consequently, the record shows that the reason for the amendment was a substantial one relating to patentability and so the *Warner-Jenkinson* presumption applies.

The third question in a prosecution history estoppel analysis "addresses the scope of the subject matter surrendered by the narrowing amendment." *Festo*, 344 F.3d at 1367. The

3

presumption is that "the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id*. While Belkin's rack-and-pinion assembly might have satisfied claim 1 under the doctrine of equivalents as that claim read prior to amendment, the rack-and-pinion assembly presumptively cannot be deemed an equivalent of claim 1 as amended, where the amendment added the requirement that the adjustable clamping element must be comprised of "two rods, an expandable arm, a main body, and springs inserted one each over each rod and held in place by a screw affixed to an end of the respective rod." The added language does not literally describe a rack-and-pinion clamping element.

The final question is whether Kenu has nevertheless rebutted the *Festo* presumption. That burden is squarely on Kenu. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002) (holding that "patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question"). A patentee has several ways to "overcome the presumption that prosecution history estoppel bars a finding of equivalence," *id*. at 740-41, but Kenu attempts to argue only that "[t]he amendment adding rods and springs bore no more than a tangential relationship to a rack and pinion equivalent." Dkt. No. 96-25 at 11.

The problem for Kenu is that it argues only what the amendments were not for, rather than answering the pertinent question of why they were made. *See id*. at 11-12 ("The examiner made a clear written record affirming that the rods and springs element was added for a reason 'other' than patentability," and "[t]he examiner never rejected any claim during prosecution based upon the existence in the prior art of a rack and pinion mechanism"). It does not argue, or identify from the prosecution history record, what the reason for the amendment was. So not only does the Court reject, as discussed above, Kenu's argument that the record establishes that the amendment was made for a reason other than patentability, but the Court finds that this case cannot meaningfully be distinguished from the situation before the Federal Court in *Festo*, 344 F.3d 1359. As in that case, "the prosecution history reveals no reason for the" rods and springs amendment, and Kenu, as the patentee, "still identifies no such reason." *Id*. at 1371-72. Consequently, Kenu has not shown that the rationale for the rods and springs amendment was only tangential to the

1  accused equivalent, and the Court concludes that Kenu "cannot satisfy the 'tangential' criterion"
2  for the rack-and-pinion equivalent. *Id*.

Prosecution history estoppel "bars the patentee from relying on the doctrine of equivalents for the accused element." *Id*. at 1367. Kenu does not dispute that all of the asserted claims depend upon claim 1. Consequently, the Court grants summary judgment for Belkin that its Vent Mount product did not infringe the '714 patent. That conclusion makes it unnecessary to reach Belkin's or Kenu's other summary judgment and claim construction arguments for this patent.

## II. 'D707 PATENT

Belkin makes a number of arguments about the 'D707 patent, including that the "ornamental appearance of Vent Mount 1 is plainly dissimilar to the 'D707 patent," and that there is a lack of evidence of actual confusion, notwithstanding the consumer survey conducted by Kenu's expert. Dkt. No. 80 at 14-20. These arguments miss the mark. The applicable test for infringement of a design patent is the "ordinary observer" test, under which "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quotations omitted). This is a quintessential fact question. *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("conclusions about reasonable jurors are difficult to make on an issue of this factual dimension"); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) ("[d]esign patent infringement is a question of fact"). There is nothing about this case that turns that question into one that can be answered as a matter of law.

Kenu for its part seeks summary judgment that the 'D707 patent is valid according to one stray comment by Belkin's expert. *See* Dkt. No. 73 at 5 ("Belkin's expert admitted [in a deposition] that the 'D707 Patent is valid, affirming that he 'would not consider it obvious in light of Huang and Bulsink . . . . I would look at it and say it's a valid design patent . . . .,'" and consequently arguing that "[o]n this testimony alone, Belkin cannot carry its burden to prove invalidity by clear and convincing evidence."). That is not a sound basis for summary judgment.

1  Consequently, for this patent, neither side makes a winning summary judgment argument.
2  There are genuine disputes of material fact that will need to be resolved by a jury.

**III.  UNFAIR COMPETITION CLAIM**

The parties' arguments about Kenu's UCL claim were rather cursory and underdeveloped, but the claim must be dismissed.

As an initial matter, state unfair competition laws are preempted by the federal patent law to the extent the claims are duplicative and contain no qualitatively different element. *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993). That applies here. Kenu's UCL claim is entirely derivative of its patent infringement claims. To the extent Kenu seeks to argue that deception of the public was the extra element here, Dkt. No. 96-25 at 23, a closer look shows that the alleged deception is based on nothing more than the alleged similarity of the Vent Mount to the AIRFRAME. This is the 'D707 patent infringement claim repackaged as a UCL claim, which the law does not permit.

Separate and apart from that, Kenu and Belkin are competitors in the market for cell phone car mounts. In that context, well-established California law directs that there can be no UCL claim without "conduct that threatens an incipient violation of an antitrust law." *Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). Kenu has identified nothing that comes close to making out an antitrust claim against Belkin, even crediting the facts it alleges now in its summary judgment briefing that it did not plead in the complaint. Although Kenu says Belkin engaged in an "operation to 'kick out Kenu' from Apple" and take away Kenu's business, that is hardly anti-competitive within the meaning of the antitrust laws. Dkt. No. 96-25 at 23 (arguing that because of Belkin and its development of the Vent Mount product, "Kenu's competing AIRFRAME product was removed from the Apple Store in 2015, which caused Kenu to thereby lose sales").

The Court consequently grants summary judgment for Belkin on Kenu's UCL claim.

//
//
//

**CONCLUSION**

Summary judgment is granted for defendant Belkin on Kenu's '714 patent infringement claim and UCL claim. The 'D707 patent infringement claim will proceed to a trial by jury.

**IT IS SO ORDERED.**

Dated: May 31, 2018

JAMES DONATO
United States District Judge